```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Teresa L. Hatfield,              :

     Plaintiff,                 :

  v.                             :     Case No. 2:11-cv-0341

Commissioner of Social Security,:     JUDGE GREGORY L. FROST
                                      Magistrate Judge Kemp
     Defendant.                 :

                    REPORT AND RECOMMENDATION

                        I.   Introduction

    Plaintiff, Teresa L. Hatfield, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") which was issued following a remand from this Court.  The decision currently under review granted in part and denied in part plaintiff's September 6, 2002, application for supplemental security income benefits.  That application alleged that plaintiff became disabled on November 1, 1991, as a result of multiple medical disorders.  The partially favorable decision, issued by an Administrative Law Judge on February 26, 2009, found that plaintiff became disabled on July 4, 2005, but was not disabled before that date.  That decision became the final decision of the Commissioner when the Appeals Council denied review on March 18, 2011.

    Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on June 27, 2011.  Plaintiff filed a statement of errors on August 15, 2011, to which the Commissioner responded on September 19, 2011.  Plaintiff filed a reply brief on September 29, 2011, and the matter is now ripe for decision.

                II.   The Prior Judicial Decision

    This case was previously before this Court. See Hatfield v. Comm'r of Social Security, Case No. 2:06-cv-01073.  In that case,

the Court concluded that the Commissioner violated the "treating physician" rule, see 20 C.F.R. §404.1527, by failing to articulate sufficient reasons for discounting the opinions of Dr. Hamill, plaintiff's long-time treating psychiatrist.  In particular, the Court found that the Commissioner was not entitled "to disregard his opinions simply because Dr. Hamill relied to a great extent on the plaintiff's own report of symptomatology" and that the credibility of that self-report should not have been questioned based on plaintiff's ability to sit through the administrative hearing or because those symptoms purportedly conflicted with plaintiff's description of her activities of daily living.  As the Court concluded, plaintiff's "testimony that she is unable to do any significant reading due to memory deficits and that her social interactions are limited to visiting a friend once every six months" - testimony credited by the Commissioner - was not inconsistent with the symptoms she reported.  Consequently, the Court remanded the case for a determination of how much weight should be afforded to Dr. Hamill's opinions.  Hatfield v. Commissioner of Social Sec., 2008 WL 622967, *8-9 (S.D. Ohio March 6, 2008).

### III.  The Proceedings on Remand

After this Court's remand order issued, the Appeals Council vacated the ALJ's prior decision and remanded the case to the ALJ for further proceedings.  The ALJ held a supplemental hearing at which plaintiff, a medical expert, and a vocational expert all testified.  Additionally, a number of new exhibits were admitted, including an updated list of plaintiff's medications and approximately 150 pages of medical records covering a time period from 2005 through 2008.  The Court will include a summary of the pertinent new evidence here, as well as make reference to the prior Report and Recommendation, which recapped the evidence before the ALJ at the time of the prior administrative decision.

2

IV. Plaintiff's Testimony

Plaintiff's testimony at the first administrative hearing, briefly summarized, showed that plaintiff was a recovering alcoholic who had also had some problems with cocaine use. She had worked as a cashier at a Lowe's store, at a factory for a few months, as a bartender, and in a grocery store bakery. (Tr. 407). Her worst problems were migraine headaches and difficulty in being around people, although she also had some physical issues, including difficulty standing, walking, sitting, and lifting more than 20 pounds. Her typical day consisted of getting her son ready for school, going back to bed for several hours, and then helping her mother clean house and do laundry. She also testified to daily crying spells. See Hatfield, supra, at *1-2.

At the second administrative hearing, plaintiff testified that she had gained about sixty pounds since the prior hearing. She attributed that weight gain in part to her depression. She did not have any additional work experience. She viewed depression as her primary problem, preventing her even from caring for her son on a daily basis. She had changed psychiatrists since the last hearing, but had not gotten any better. She still experienced headaches daily, but they were not all migraines. She also had a fear of being around people, which began after she suffered a head injury in 1991.

Plaintiff is able to do housework on an occasional basis. She has arthritis in her hips and pain in her back. Those problems limit her ability to sit, stand and walk. She lies down most of the day. She goes out to get her medication every other week and may do some light grocery shopping at that time. Being in a store is difficult due to her fear of people. (Tr. 667-81).

V. The Medical Records

Because plaintiff was granted benefits based on a disability

3

beginning on July 4, 2005, and because her claim of error raises issues about the way in which Dr. Hamill's opinions, which were rendered in 2002 and 2003, were evaluated by the ALJ, the Court will focus its attention primarily on Dr. Hamill's records. Other medical records will be summarized to the extent that they help to inform the Court's opinion on whether the ALJ had adequate reasons for assigning little weight to Dr. Hamill's views.

Previously, the Court described the records concerning plaintiff's mental impairment in this way:

> Dr. Shiflett ... responded to a Bureau of Disability questionnaire on September 24, 2002. He reported having seen plaintiff for only a short period of time in 2001. At that time, she suffered from major depression and a panic disorder. She was treated with medication management and psychotherapy. Her response to treatment was poor. (Tr. 225-27). Dr. McGlone responded to a similar questionnaire indicating that he was treating plaintiff for major depression and that she has always presented with a severely depressed mood with a flat affect, poor communication, and poor insight. He thought that she showed poor response to therapy for depression but that her anxiety and chronic headaches were controlled. He believed that she had no ability to concentrate or think and that her interaction with others was strained. Although she was able to follow instructions, her ability to function independently was poor. (Tr. 239-41).
>
> Plaintiff was seen by Dr. Hamill at the Scioto Paint Valley Mental Health Center during 2002. He believed she was suffering from a mixed bipolar state with psychotic features as well as anxiety. On May 24, 2002, she described auditory and visual hallucinations as well as suicidal thoughts. She also described irritability, insomnia, racing thoughts, anger, and mood swings. By June 28, 2002 she was feeling better but had recently been placed on medication for panic attacks. By September 24, 2002, she was denying any psychotic symptoms but also was having difficulties in her marriage. Her situation was essentially unchanged by November 5, 2002. (Tr. 242-52). Dr. Hamill also completed a mental functional capacity assessment

4

indicating that plaintiff was markedly limited in her ability to understand, remember, and carry out detailed instructions, and was extremely limited in her ability to maintain attention and concentration for extended periods, maintain regular attendance and punctuality, and complete a normal work day and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace. (Tr. 253-54).

Plaintiff underwent a psychological evaluation by Dr. Tanley, a psychologist and neuropsychologist, on December 6, 2002.  She described mental problems including poor memory as well as arthritis in her hip and migraine headaches.  She told Dr. Tanley she stopped working at Lowe's because she became pregnant.  Her affect was flat and her eye contact was poor.  A sense of hopelessness, helplessness, and worthlessness pervaded her speech.  Test results placed her in the borderline range of intelligence.  The MMPI-II was administered but was invalid, although Dr. Tanley did not believe that it was from conscious over-reporting of symptoms.  He thought that her ability to relate to others was mildly impaired, as was her ability to understand and follow simple instructions and to perform simple, repetitive tasks.  She had a moderate impairment in her ability to withstand the stress and pressure of daily work.  He rated her GAF at 50.  (Tr. 255-58).

\* \* \*

The record also contains additional documents from Dr. Hamill, plaintiff's treating psychiatrist.  Two office notes dated December 26, 2002 and February 20, 2003 indicate that although plaintiff was having more anxiety at the earlier appointment, she was doing better with medications at the latter one.  At the latter appointment, Dr. Hamill described her diagnoses as including bipolar disorder, depressed, in remission, a generalized anxiety disorder, and an adjustment disorder with depressed and anxious mood.  He also completed a Psychiatric Review Technique Form indicating that plaintiff had generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, apprehensive expectation, and vigilance and scanning.  In addition, he repeated his earlier conclusion that she suffered from marked difficulties in maintaining social functioning and extreme difficulties in maintaining concentration, persistence or pace.  He also thought that she had poor or no

>ability to function in a large number of areas relating
>to occupational adjustments. (Tr. 298-309).  Her
>counselor at Scioto Paint Valley Mental Health Center
>also filled out a questionnaire indicating, among other
>things, that plaintiff is easily distracted and
>anxious, that she has a high need for rest, and that
>she does not handle stress well at all and will either
>become anxious or withdraw. (Tr. 310-14).
>
>               * * *
>
>   Plaintiff continued to see Dr. Hamill at least
>through May 27, 2005.  His office notes for a two-year
>period beginning in May, 2003 reflects that plaintiff's
>depression varied in severity from visit to visit.  Her
>generalized anxiety disorder continued relatively
>unabated.  On the last visit, she still described
>anxiety and panic attacks.  Dr. Hamill did comment that
>her use of one of the drugs referred to in Dr.
>Semmelman's report, Librium, a benzodiazepine, was
>appropriate because she was using it only as prescribed
>and because it was helping her to function.  (Tr. 345-
>52, 384-85).
>
>   On September 1, 2005, plaintiff consulted Dr.
>Shiflett for a psychiatric evaluation due to her
>depression and anxiety.  She reported chronic mood
>dysphoria as well as difficulties with attention,
>concentration, and motivation.  She also had
>intermittent anxiety attacks.  She appeared tearful and
>her affect was constricted.  Her attention and
>concentration were impaired as was her short term
>memory.  His diagnostic impression was mood disorder
>and major depressive disorder versus bipolar mood
>disorder as well as a panic disorder.  He rated her GAF
>at 55 and planned to initiate psychotherapy.  He also
>changed her medications.  (Tr. 388-90).

<u>Hatfield, supra</u>, at *3-5.

The only records which relate at all to plaintiff's condition in 2005 are some additional treatment notes from Dr. Shiflett.  They are somewhat difficult to read but show that in December, 2005, plaintiff was still complaining of short-term memory problems and symptoms of her personality disorder, and in early 2006 she seemed sullen and withdrawn.  Similar comments appear in notes throughout 2006, indicating that there had not

6

been much change in her condition.

## VI. The Vocational Testimony

Vocational experts also testified at both administrative hearings. The first expert, Mr. Rosenthal, identified plaintiff as having one transferable skill, cashiering, which would transfer to jobs at the sedentary level. Physically, if she could work as described by Dr. Nusbaum, plaintiff could perform her earlier jobs as bartender and bakery helper, and some other jobs as well. If she also had the psychological limitations indicated by Dr. Tanley, she could work as a baker's helper and also could do a number of other unskilled jobs.

A different vocational expert, Mr. Kiger, testified at the second administrative hearing. He stated that if plaintiff had to miss as much work after July 4, 2005, as indicated by Dr. Nusbaum, she could not be employed. He also said that Dr. Hamill's 2003 evaluation is also not consistent with employment. (Tr. 689-91).

## VII. The Partially Favorable Decision

The ALJ's partially favorable decision is found at pages 455-468 of the administrative record. In that decision, the ALJ concluded, first, that plaintiff suffered from severe impairments including status post closed head injury with fractured mandible and malunion, mild osteoarthritis of the left hip, morbid obesity, migraine headaches, Percocet headaches, adjustment disorder with depressed mood, borderline intelligence, and remote history of alcohol and cocaine abuse. The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving on to the next step of the sequential evaluation process, the ALJ determined that plaintiff had the residual functional capacity to lift 15 pounds frequently and 35 pounds

7

occasionally, but could not climb ladders, ropes or scaffolds or work at heights, be around hazardous machinery, or drive. Further, plaintiff was found to be mildly impaired in her ability to relate to others and moderately impaired in her ability to withstand work stress.  From July 4, 2005 forward, she would also miss two to three days of work per month.

Reiterating a finding made in the first administrative decision, the ALJ again concluded that plaintiff could not perform any of her past work.  However, before July 4, 2005, the ALJ found that she was able to perform a substantial number of sedentary, light and medium unskilled jobs.  Therefore, she was awarded benefits based on a finding of disability beginning on July 4, 2005.

VIII.  Plaintiff's Statement of Specific Errors

In her Statement of Errors, plaintiff again raises a single issue, which is very similar to the issue she raised in the prior case.  She asserts that the ALJ erred by giving no weight to Dr. Hamill's opinion, an error which, she claims, is compounded by the ALJ's failure to follow this Court's mandate when it remanded the case to the Commissioner.  The fundamental question before the Court is whether the Commissioner's decision is supported by substantial evidence.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as

a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

   The Court previously recited the standard applicable to review of a decision which does not afford either great or controlling weight to the opinion of a treating source, and incorporates that recitation here.  See Hatfield v. Commissioner of Social Sec., 2008 WL 622967, *7 (S.D. Ohio March 6, 2008).  Obviously, it is important to examine in some detail the ALJ's decision to see if the ALJ both had, and articulated, valid reasons for the decision concerning the treating source opinions, especially where, as here, that decision was to afford those opinions no weight at all.

    The ALJ's discussion of Dr. Hamill's opinions is found at pages 461-62 of the record.  First, the ALJ considered the November, 2002 residual functional capacity assessment, which found plaintiff "extremely limited" in a number of important work-related areas.  These findings were discounted by the ALJ because they were "not consistent with or supported by the medical evidence of record or Dr. Hamill's own treatment notes" and because he did "not provide sufficient clinical data to

9

support his conclusions." (Tr. 461). More specifically, the ALJ pointed out that Dr. Hamill had not seen plaintiff in almost three years before resuming his treatment of her in May, 2002; that after some medication adjustments made in May, she was doing better, and that this improvement continued through November of that year; and that her depressive disorder was deemed mild.

Turning next to Dr. Hamill's March, 2003 report, which contains similar findings about plaintiff's work abilities, particularly her ability to relate to co-workers, deal with the public, interact with supervisors, and maintain attention and concentration, the ALJ found that "Dr. Hamill did not provide any medical or clinical findings to support his assessment and his assessment was also inconsistent with his own treatment notes." Id. She observed that only one month before this assessment, Dr. Hamill noted that plaintiff was doing well on her medications, although she was continuing to experience stress in her home life, and that most of the behaviors Dr. Hamill observed (things like flow of conversation and speech, cognitive functioning, insight, and judgment) were "ok." (Tr. 461-62).

The ALJ then compared Dr. Hamill's opinions to the rest of the record. She pointed out inconsistencies with the comments and evaluations made both by Dr. Tanley, the consultative examiner, and Dr. Shiflett, plaintiff's new treating source. Next, she noted that Dr. Hamill's opinions did not include a function-by-function analysis and were therefore "vague and imprecise." (Tr. 462). She rejected any general statements to the effect that plaintiff was "unable to work" as being vague and invading the province of the Commissioner. She also found that Dr. Hamill had not explained on what information he based his opinions, and that if he relied primarily upon plaintiff's self-report of symptoms, his views could be undercut by the fact that plaintiff was not entirely credible. Finally, the ALJ determined

that Dr. Hamill had no special expertise in the area of "reviewing an objective record and formulating an opinion as to medical severity and limitations stemming from impairments, nor did this doctor have access to all of the medical evidence that is currently in the record." Id. Ultimately, the ALJ adopted Dr. Tanley's opinion as best reflecting plaintiff's mental limitations, and incorporated his findings into both her residual functional capacity determination and in the hypothetical question posed to the vocational expert.

The Court can quickly dispose of plaintiff's argument that the ALJ did not follow the directives of this Court on remand. The only particular portion of the Court's prior order which plaintiff claims the ALJ violated was a statement to the effect that the ALJ was "free not only to re-evaluate the record ... but to obtain additional medical opinions if that would be helpful." The ALJ chose not to obtain any additional medical opinions, but rather ended up relying upon Dr. Tanley's evaluation, rejecting both Dr. Hamill's opinions and the views of the state agency reviewers which, as the Court noted in its prior order, were not particularly useful. Since the Court did not specifically direct the ALJ to obtain an additional medical opinion on the issue of the severity of plaintiff's mental impairment, the ALJ did not violate the prior order. Rather, the issue is simply whether the decision which the ALJ made has substantial support in the record and complies with the treating physician rule. Although the absence of an evaluation by a medical advisor (other than the consultative examination done by Dr. Tanley) may well factor into the Court's decision, the ALJ's failure to call an expert advisor to testify as to plaintiff's mental limitations is not, by itself, grounds for relief.

Several of the reasons cited by the ALJ for giving no weight to Dr. Hamill's opinions are valid if they find support in the

record.  It is also important to keep in mind that the ALJ did not simply reject completely the notion that plaintiff had no mental limitations, but decided that they were not as severe as Dr. Hamill indicated.  In other words, his opinions were discounted to the extent that they described a greater degree of severity in plaintiff's symptoms than did Dr. Tanley, but they were not disregarded altogether.

One reason an ALJ might discount the view of a treating mental health source is if that source based his or her opinion primarily upon the plaintiff's self-report of symptoms, but the plaintiff is found not to be credible or reliable concerning the extent of such symptoms.  See, e.g., McGlothin v. Commissioner of Social Sec., 299 Fed. Appx. 516 (6th Cir. October 31, 2008).  The ALJ cited that reason here, but plaintiff argues that the ALJ never made an express finding that her report of symptoms was not credible.  That assertion is not borne out by the record, however.  The ALJ actually concluded that "[t]he claimant's subjective complaints are not supported by, nor are they consistent with, the objective medical evidence." (Tr. 463).  In particular, the ALJ noted that her description of disabling symptoms prior to July 4, 2005, was inconsistent with a history of non-aggressive treatment and good response to medications. Id.  The ALJ also noted inconsistencies between plaintiff's description of her symptoms and her September, 2002 disability report, where she stated she took her son to preschool, played with him, prepared meals, did laundry, cleaned, read, went to church, visited her mother, and said she had no problems getting along with others.  (Tr. 464).  This constitutes the credibility finding to which the ALJ referred when discussing Dr. Hamill's opinions, and plaintiff has not directly argued that this finding was not supported by the record or otherwise erroneous.

A conflict between a treating source's notes and that

12

source's opinions is another acceptable basis for discounting a treating source's views. See, e.g., Dawson v. Commissioner of Social Sec., 2012 WL 833656 (6th Cir. Mar 13, 2012). That was another of the reasons relied on by the ALJ in this case. Plaintiff does not specifically address this ground in her statement of errors. Again, a review of the ALJ's decision shows that the ALJ focused on notes showing an overall improvement in plaintiff's condition during 2002 and 2003, and Dr. Hamill's description of plaintiff's bipolar condition as "mild." He also indicated areas of normal functioning and a good response to medication. His opinion of extreme limitations on her ability during this same time can reasonably be viewed as contradictory to, or not supported by, his own notes, and the ALJ, as the primary resolver of such conflicts, was entitled to cite this evidence in support of a decision to give his views less than controlling weight.

    The ALJ also cited to conflicting evidence - specifically, the evaluation done by Dr. Tanley - as a reason for discounting Dr. Hamill's opinions. Again, plaintiff's statement of errors does not argue that the ALJ was not entitled to consider Dr. Tanley's report, even though he was not a treating source, and the case law supports her decision to take a one-time examiner's findings into account, especially if they are based on other evidence in the record, such as objective test results. See, e.g., Tyrpak v. Astrue, 2012 WL 832450 (N.D. Ohio March 9, 2012). The ALJ pointed out that Dr. Tanley was the only mental health professional to administer tests, and that he based his opinion on these as well as plaintiff's report of symptoms. She also found the symptoms on which he relied to be supported by other evidence, such as plaintiff's own reports to other sources. This type of conflict in the medical evidence is one which the ALJ is generally entitled to resolve as long as there is evidence upon

13

which a reasonable person could rely in reaching the same resolution as did the ALJ.

Plaintiff does argue that the ALJ simply repeated the same error which led to the prior reversal by stating, again, that Dr. Hamill's opinions were unreliable because they did not stem from any objective testing. This Court has stated that "[a] treating medical source's opinions do not bind the Commissioner when unsupported by detailed clinical and diagnostic test evidence." Morgan v. Astrue, 2011 WL 3714781, *8 (S.D. Ohio July 20, 2011), adopted and affirmed 2011 WL 3739022 (S.D. Ohio August 24, 2011). Certainly, objective tests are more pertinent in some realms of medical practice than others, but the complete absence of such testing is a factor which may be cited in support of a finding that less than controlling weight should be given to the opinion of a treating source, even if it may not properly be the only factor upon which to base such a decision.

It is true that some of the ALJ's rationale is either irrelevant (for example, Dr. Hamill did not simply say plaintiff was unemployable, but rated her functional capacity for performing work-related activities) or not especially well-supported by the record (for example, Dr. Hamill does appear to have engaged in some function-by-function analysis, even though the ALJ criticizes him for not having done so). Overall, however, the Court concludes that the ALJ's rationale is well-articulated, so that there is no violation of the rule of cases like Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007) and Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004), and that it is sufficiently well-supported by acceptable reasons for giving more weight to the findings of Dr. Tanley than Dr. Hamill. Despite giving little or no weight to Dr. Hamill's opinions, the ALJ still found that plaintiff had a severe mental impairment, and that she was moderately impaired

in her ability to withstand ordinary work stress.  Because a vocational expert testified that there are jobs which someone with plaintiff's residual functional capacity, including the mental limitations described by Dr. Tanley, could perform, the ALJ's decision that plaintiff was not disabled prior to July 4, 2005 is supported by substantial evidence.  For that reason, the decision should be affirmed.

## IX.   Recommended Disposition

Based upon the foregoing, it is recommended that the plaintiff's Statement of Errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## X.   Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v.

<u>Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                    <u>/s/ Terence P. Kemp</u>
                                    United States Magistrate Judge